h McKAY, Judge.
Plaintiff, June Coleman, appeals the trial court’s dismissal of her Petition for Supplemental Partition.[1] We affirm
FACTS
Leslie L. Robinson, Jr., and June Coleman were married on June 30, 1955, and physicahy separated in January of 1986. The community of acquets and gains was terminated on February 14, 1986. On March 26, 1986, Ms. Coleman obtained a judgment of separation, based on abandonment, against Mr. Robinson in Civil District Court, Orleans Parish. Shortly thereafter, Mr. Robinson, who was employed by the federal government as an *67 administrative law judge, moved to North Carolina and took up residence there. Mr. Robinson then filed for divorce in the General Court of Justice, District Court Division, Meeklenberg County, North Carolina.[2] That court entered a judgment of divorce on July 20,1987.
The parties entered into a “Separation, Support, and Property Settlement Agreement” on August 27,1987. On January 18, 1994, Ms. Coleman filed a ^petition for supplemental partition alleging that certain pension rights were community property or marital property, and had not been partitioned in the property settlement agreement. Mr. Robinson answered, asserting that, pursuant to the terms of the agreement and under the controlling North Carolina law, the pension benefits had been partitioned, lifter a trial on the merits, the court below rendered judgment in favor of Mr. Robinson and dismissed Ms. Coleman’s petition. It is from this judgment that Ms. Coleman now appeals.
ISSUES
At issue in this appeal is 1) whether the trial court erred in determining that the agreement between the parties should be governed by the law of North Carolina, or in the alternative that the trial court erred in its construction and application of that law, 2) whether the lower trial court erred in failing to enforce the provision of the agreement requiring Mr. Robinson to designate Ms. Coleman as beneficiary of the survivor’s annuity and in failing to award attorney’s fees as provided for in the agreement, and 3) whether the trial court erred in failing to find that Mr. Robinson was in fraud and bad faith and breached his fiduciary duty to Ms. Coleman thereby making him hable for damages and attorney’s fees.
STANDARD OF REVIEW
The appellate court’s function is not to substitute its collective decision for that of the trial court, but to review the decision for error of law. Leche v. Leche, 531 So.2d 565 (La.App. 4 Cir.1988), writ denied, 534 So.2d 449 (La.1988). An appellate court must accord great weight to the factual findings and conclusions of 13the trial judge who was in a position to observe the witnesses and their demeanor. It is not within the province of the appellate court to disturb reasonable evaluations of credibility or reasonable factual inferences, even though other, equally reasonable, conclusions could have been reached. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Alphonso v. Alphonso, 422 So.2d 210 (La.App. 4 Cir.1982).
CHOICE OF LAW
The contractual choice of law is expressly set forth in the agreement. Paragraph 13 of the agreement specifically states: “This agreement shall be governed by and construed in accordance with the laws of the State of North Carolina.” According to Louisiana Civil Code Article 3540, “[a]ll other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.” By the clear and unambiguous language of the Separation, Support, and Property Settlement Agreement, the parties agreed that North Carolina law would apply to the interpretation of the agreement.
Under North Carolina law, the retirement benefits sought by Ms. Coleman are partially marital property as defined by North Carolina General Statute § 50-20, because the benefits were acquired both during and after the parties’ marriage. That statute defines marital property as:
All real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the Lseparation of the parties, and presently owned, except prop *68 erty determined to be separate property in accordance with subdivision (2) of this section. Marital property includes all vested pension, retirement, and other deferred compensation rights, including military pensions eligible under the federal Uniformed Services Former Spouses’ Protection Act.
Paragraph 3 of the Agreement between the parties states:
The Wife, for herself, her heirs, executors, administrators, and assigns, hereby releases and relinquishes unto the Husband, his heirs, executors, administrators, and assigns, all right of future support, all right of dower, inheritance, descent and distribution, and right to dissent from his will, and any and all other rights arising out of their marriage relationship, and to any and all property or interest in property, real, persona], and mixed, now owned or hereafter acquired by Husband, and hereby agrees that Husband henceforth may acquire, hold, manage, alienate, lease, and convey his property without her knowledge, further consent, or join-der, in accordance with the provisions of law, the same as if she never had been married to him, and further hereby does release, relinquish, and renounce any and all right to administer upon his estate.
Paragraph 7 of the Agreement goes on to state:
Husband and Wife have accomplished a complete liquidation and division of their property in full settlement of all of their property rights, whether arising out of the equitable distribution statute (N.C.G.S.50-20, etc.) or under the community of acquets and gains laws in the State of Louisiana, or any other provision of the law of any other jurisdiction, statutory or otherwise, and hereby ratify the division of their property.
Ms. Coleman’s contention that her former husband’s retirement benefits were not partitioned because she was unaware that they may have been community property seems incredulous. The very language of the agreement between the parties states that a complete liquidation and division of their property has been accomplished. The North Carolina Supreme Court has held; “It must be presumed the parties intended what the language used clearly expresses.” Hartford Accident & Indemnity Co. v. Hood, 226 N.C. 706, 40 S.E.2d 198 (1946). In the instant case, the parties willingly, knowingly, and with the advice of counsel entered into this agreement which under the laws of [sboth North Carolina and Louisiana constituted a full settlement of all property rights between them. The trial court did not err in determining that North Carolina law controlled the agreement, nor did it err in its construction and application of North Carolina law.
SURVIVOR’S ANNUITY
Ms. Coleman contends the trial court erred in failing to enforce the provision of the agreement requiring Mr. Robinson to designate her as beneficiary of the survivor’s annuity and in failing to award attorney’s fees as provided for in the agreement. This provision is contained in paragraph 6 of the agreement, which deals with issues of support and maintenance. Paragraph 6 reads as follows:
6. Wife waives any and all rights to support and maintenance, except as set forth as follows:
(A) Husband has paid to the Wife as alimony the sum of Two Thousand and °9ioo Dollars ($2,000.00) per month, commencing January 1, 1987, and the Husband shall pay to the Wife as alimony the sum of Two Thousand One Hundred and 00/ioo Dollars ($2,100.00) commencing the first month next subsequent to the execution of this Agreement, until the Wife shall die or remarry, except, however, when the Husband retires, and such payment shall be reduced to an amount to be determined by taking his current monthly gross income and dividing it into his gross monthly retirement *69 income, and multiplying the percentage obtained therefrom with the alimony payment of $2,100 per month. Husband shall have the right to make the alimony payments herein, 50% on the first of the month, and 50% on the 15 th of the month.
(B) During the period that Husband shall have a duty to make alimony payments to the Wife, he shall keep his life insured in an amount equal to one year’s salary earned by Husband, with Wife named as beneficiary. The amount of this life insurance shall be decreased after retirement pursuant to any then-existing rules of the United States Government.
(C) In the event Husband shall predecease Wife, alimony shall cease; however, Husband agrees to choose Option B of the Government Retirement Plan providing for Wife to receive retirement checks pursuant to government regulations.
| (¡After a careful reading of Paragraph 6, it is apparent that the purpose of Mr. Robinson’s having to choose Option B was to provide his former wife with some sort of income to replace the alimony she would lose should he predecease her. However, when Ms. Coleman remarried, Mr. Robinson was no longer obligated to pay her alimony. When this logic is applied, Mr. Robinson was also no longer required to choose option B of the Government retirement Plan. Clearly, the trial court did not err in so finding. Accordingly, the trial court’s decision to deny attorney’s fees was also free from error.
FRAUD, BAD FAITH, and BREACH OF FIDUCIARY DUTY
Ms. Coleman also contends the trial court erred in failing to find fraud, bad faith, and a breach of fiduciary duty on the part of Mr. Robinson. The court found that at all time pertinent to the execution of the Agreement, Ms. Coleman was represented by counsel, the Agreement was reviewed by counsel and Ms. Coleman, and Ms. Coleman signed the Agreement as it was presented to her and her attorney. In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1 Cir.1976). The factual findings of the trial court are therefore to be accorded very substantial weight on review. Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4 Cir.1976); Pearce v. Pearce, 348 So.2d 75, 78 (La.1977). The trial court made a credibility determination based on the testimony and the trial exhibits introduced into evidence, and it accepted the testimony of Mr. Robinson that he had not acted in bad faith or attempted to defraud his former wife. Therefore, the trial court did not |7err in finding that there was no fraud, bad faith, or breach of fiduciary duty on the part of Mr. Robinson.
CONCLUSION
For the foregoing reasons, we find that the trial court did not err. Accordingly, the judgment of the trial court is affirmed in its entirety.
AFFIRMED.
KATZ, J„ DISSENTS IN PART, AFFIRMS IN PART, WOULD REMAND AND ASSIGNS WRITTEN REASONS.

. A great deal of litigation has already occurred in this matter. It will not be discussed in this opinion unless it has bearing on the particular issues before our Court in this appeal.

. On December 18, 1986, Mr. Robinson filed a Petition for Divorce in the Civil District Court, Orleans Parish, but then after filing a preliminary default, abandoned that action.